## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| DEBORAH ANN PULLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-05574-AT |
| v. | ) | |
| | ) | |
| JANICE IZLAR in her official capacity as President of the Georgia Board of Nursing, | ) ) ) ) | **MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| Defendant. | ) | |

## INTRODUCTION

Plaintiff Deborah Ann Pulley has been a Certified Professional Midwife (CPM) since 1995, guiding mothers through uncomplicated pregnancies and helping them deliver their babies—often at the mother's home or a birth center. Pulley Dec. ¶ 3. CPMs like Ms. Pulley practiced in Georgia for decades, with joint oversight by county health boards and the North American Registry of Midwives. *See* Ga. Code Ann. § 31-26-2. But in 2015, the Georgia Board of Nursing gained the power to decide who can practice midwifery and, predictably, the Board of Nursing began requiring midwives to obtain a full-fledged nursing license in order to practice as a midwife. Ga. Comp. R. & Regs. 511-5-1-.02.

1

Because Ms. Pulley is not a nurse, she can no longer practice midwifery in Georgia. Instead, she has thrown her energy into advocating for legal reforms and public education so that Georgia moms have the flexibility to choose a Certified Professional Midwife if that is the right option for their pregnancy. Pulley Dec. ¶ 15.

Not content with prohibiting CPMs like Ms. Pulley from practicing midwifery in Georgia, the Board of Nursing recently finalized a cease and desist order commanding Ms. Pulley to stop using the title "Certified Professional Midwife," "CPM," "and/or general use of the term 'midwife.'" *See* Exh. A at 3. According to the Board, if Ms. Pulley truthfully describes herself as a midwife, people will jump to the conclusion that she is a nurse—even though she isn't claiming to be a nurse or even trying to find clients. Exh. A at 2. In reality, she simply wants to honestly describe herself by her qualifications, just like doctors and lawyers do. Pulley Dec. ¶ 16.

The Board's gag order is especially tough for Ms. Pulley because she sits on the board of the entity that grants the CPM title: the North American Registry of Midwives. Pulley Dec. ¶ 6. Yet if she uses the title that she worked so hard to achieve, even when identifying herself on the Registry's website, she risks a $500 fine every time she truthfully describes her qualifications. *See* Exh. A at 4.

2

The Board's gag order is unconstitutional. The Court should enter a preliminary injunction enjoining the Board's enforcement of Ga. Code Ann. § 43-26-6 and Ga. Comp. R. & Regs. 511-5-1-.01 and .02 because those provisions violate the First Amendment as explained in *Serafine v. Branaman*, 810 F.3d 354, 360–61 (5th Cir. 2016). When the Board singles out specific words and phrases such as "midwife," "Certified Professional Midwife," and "CPM" for disfavored treatment, that action is "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015). The Board cannot meet that heavy burden and, as a result, Ms. Pulley is likely to succeed on the merits of her claim.

Even though Ms. Pulley is likely to succeed on the merits of her First Amendment claim, she will suffer irreparable harm if the Board is not preliminarily enjoined from enforcing Ga. Code Ann. § 43-26-6 and Ga. Comp. R. & Regs. 511-5-1-.01 and .02 during this litigation. Ms. Pulley has already altered her speech in response to the cease and desist order, editing her life story to comply with the linguistic edicts of the Board. Pulley Dec. ¶ 17. This "loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Finally, the balance of equities and the public interest both favor preliminary relief here. Without a preliminary injunction the harm to Ms. Pulley is severe: she is prohibited from speaking about her experience and qualifications as a midwife. *See Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010) (quoting *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) ("[w]hen assessing the severity of burdens on speech, we have held that 'even a temporary infringement of First Amendment rights constitutes a serious and substantial injury.'"). Any countervailing interest the Board has in prohibiting Ms. Pulley from speaking is insufficient to override her First Amendment right to free speech. *See id.* ("[the] public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law."). And the public is best served by being able to access a "free flow of constitutionally protected speech," rather than having that information restricted by the government. *American Civil Liberties Union of Georgia v. Miller*, 977 F. Supp. 1228, 1235 (N.D. Ga. 1997).

## STATEMENT OF FACTS

Midwifery is an evidence-based care model that focuses on empowering parents to make informed decisions about pre- and post-natal care. Pulley Dec.

4

¶ 8. It is often a more personalized model of care, based on a close professional relationship between mother and midwife. Pulley Dec. ¶ 9.

Since 1970, Ms. Pulley has attended over 1,000 births; first as a nursing assistant in a Hong Kong hospital, and then as a midwife in Georgia. Pulley Dec. ¶ 2. Based on her experience and knowledge, Ms. Pulley was designated as a "Certified Professional Midwife" (CPM) by the North American Registry of Midwives (NARM) in 1995. Pulley Dec. ¶ 3. Ms. Pulley joined NARM in 1994, and currently serves on its board and as its Public Education and Advocacy Coordinator. Pulley Dec. ¶ 6. In that capacity, she travels around the country, and occasionally abroad, speaking and exhibiting on behalf of NARM at a diverse range of conferences, including the American College of Nurse Midwives and the National Conference for State Legislators. Pulley Dec. ¶ 7.

In 1985, Ms. Pulley helped establish the Georgia Midwifery Association, which worked closely with the Georgia Department of Public Health to establish and enforce standards of care for midwives. Pulley Dec. ¶ 10. In 2013, the Georgia Midwifery Association worked with the Georgia Department of Vital Records, with approval from the Department of Public Health, to recognize the NARM CPM certification and allow CPMs to register home births. Pulley Dec. ¶ 11. Ms. Pulley has also served on two Department of Public Health task forces and two legislative study committees as a CPM.

5

Pulley Dec. ¶ 12. In recognition of her efforts, in 1998 Ms. Pulley was awarded a certificate of honor from the Georgia Secretary of State for significant contributions to health care in Georgia. Exh. B.

The regulation of midwifery in Georgia was transferred in 2015 from the Department of Public Health to the Board of Nursing ("Board"), and Georgia midwives are now required to obtain a full-fledged nursing degree and become Certified Nurse-Midwifes in order to continue practicing independently. Ga. Comp. R. & Regs. 511-5-1-.02. In contrast, about 35 states make possession of the CPM certification the basis for licensure as a midwife. Pulley Dec. ¶ 4. Ms. Pulley is a licensed midwife in Tennessee, but is not a licensed nurse or "Certified Nurse-Midwife" as defined under Georgia law. Pulley Dec. ¶ 5.

In line with the new Georgia rule, Ms. Pulley has worked closely with a Certified Nurse-Midwife—Kay Johnson—for over 30 years, and since 2011 they have jointly operated Atlanta Birth Care, with Ms. Pulley serving as the office manager. Pulley Dec. ¶ 13. Ms. Pulley no longer practices midwifery in Georgia and has turned her attention to advocating for midwifery through her role with NARM and lobbying to change laws in Georgia and elsewhere governing the practice of midwifery. Pulley Dec. ¶ 15. Her credibility as an advocate for midwifery care depends in large part on being able to accurately describe her credentials and experience—which she can only do if she can

6

continue describing herself truthfully as a "Certified Professional Midwife" or "midwife." Pulley Dec. ¶ 16.

However, in June 2019, Ms. Pulley received a cease and desist order from the Board of Nursing demanding that she "cease and desist from holding herself out to the public as a 'Certified Professional Midwife' and/or using the identifying title 'midwife' in any form." Exh. A at 3. In response to the Board's order that she cease "use of the title 'Certified Professional Midwife,' 'CPM' and/or general use of the term 'midwife'," *see* Exh. A at 2, Ms. Pulley removed all references to herself using the verboten titles on Atlanta Birth Care's website, the NARM website, and on her personal social media accounts, and she has stopped using "the identifying title 'midwife' in any form." *See* Exh. A at 3; Pulley Dec. ¶ 17. On November 25, 2019, Ms. Pulley signed the cease and desist order, and on December 2, 2019, the Board finalized the order. Exh. A 4–5.

On December 11, Ms. Pulley filed this civil rights action, seeking wholly prospective relief against future enforcement of Defendant's unconstitutional interpretation of state law and regulations. Doc. 1. Ms. Pulley now seeks a preliminary injunction to stop the Board of Nursing from preventing her from truthfully describing her background and credentials online and while advocating for midwifery care in the future.

7

## STANDARD OF REVIEW

In deciding whether to issue a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, the Court must consider whether the moving party has shown that: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).

## ARGUMENT

## I.   MS. PULLEY IS LIKELY TO SUCCEED ON THE MERITS OF HER FIRST AMENDMENT CLAIM

This case does not concern whether Ms. Pulley may engage in the practice of midwifery in Georgia without the necessary license. Rather, this case concerns only whether Ms. Pulley—a "Certified Professional Midwife" licensed by Tennessee as a midwife—may refer to herself using those terms when discussing her biography and qualifications, and while advocating for midwifery care in Georgia. In violation of the First Amendment, the Georgia

Board of Nursing prohibits Ms. Pulley from engaging in such speech. *See Serafine v. Branaman*, 810 F.3d 354, 360–61 (5th Cir. 2016).

## A.   The Board Enforces an Invalid Content-Based Speech Restriction

The Board's prohibition on Ms. Pulley describing herself as a "midwife," "Certified Professional Midwife," or "CPM" is a content-based restriction of her speech. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 135 S. Ct. at 2226. Content-based laws are those that "appl[y] to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 2227. This is true even if the speech in question is untruthful. *United States v. Alvarez*, 567 U.S. 709, 718 (2012). And strict scrutiny of content-based laws is particularly applicable when political speech or advocacy is restricted due to its content. *Serafine*, 810 F.3d at 361; *see also Boos v. Barry*, 485 U.S. 312, 318 (1988); *Weaver v. Bonner*, 309 F.3d 1312, 1319 (11th Cir. 2002) ("The proper test to be applied to determine the constitutionality of restrictions on 'core political speech' is strict scrutiny.").[1]

---

[1] Even if Ms. Pulley's advocacy for midwife care were not "political speech," it is still non-commercial speech for which restrictions of are subject to strict scrutiny. *See Abramson v. Gonzalez*, 949 F.2d 1567, 1574 (11th Cir. 1992).

In *Serafine*, a candidate for the Texas Senate described herself as an "attorney and psychologist" on her campaign website and on candidate forms. 810 F.3d at 358. Even though the candidate had completed a four-year post-doctoral fellowship in psychology at Yale University, and was a professor in the psychology departments at Yale and Vassar College, she did not have a degree in psychology nor was she a licensed psychologist or authorized to practice psychology in Texas. *Id*. As a result, the Texas State Board of Examiners of Psychologists sent her a cease-and-desist letter ordering her to refrain from using the title "psychologist" on her website "*or in any other context*." *Id*. (emphasis in original). In response, the candidate sought declaratory and injunctive relief claiming the Texas Board was infringing on her First Amendment speech rights. *Id*.

Because the candidate's speech did not provide advice to a client or advertise to acquire a client, the Fifth Circuit held that her description of herself as a "psychologist" was fully protected political speech. *Id*. at 360–61. And since the restriction on her speech proscribed her "ability to claim to be a psychologist," the restriction was content-based subject to strict scrutiny—which it failed. *Id*. at 361. The same is true here.

Ms. Pulley refers to herself as a "midwife" and "Certified Professional Midwife" or "CPM" while describing her experience and qualifications as she

10

advocates for midwifery care in Georgia and beyond. Ms. Pulley is not engaged in the unlicensed practice of midwifery or nursing, nor is she looking for clients. Unlike the candidate in *Serafine*, though, Ms. Pulley is a licensed midwife in Tennessee and has received the premier national professional certification in her field, which is also the basis for licensure as a midwife in some 35 states.[2] Pulley Dec. ¶¶ 3–5. The Fifth Circuit's conclusion that the First Amendment protected Serafine's right to call herself a "psychologist" because she was "a psychologist by reputation or training," *id.* at 362 (citing *Byrum v. Landreth*, 566 F.3d 442, 447–48 (5th Cir. 2009)), applies with extra force here where Ms. Pulley has been certified by a national organization and licensed by the State of Tennessee as a midwife.

The Eleventh Circuit's decision in *Abramson*, 949 F.2d at 1574, foreshadowed the Fifth Circuit's conclusions in *Serafine*. The law at issue in *Abramson* permitted the unlicensed practice of psychology, but prohibited unlicensed psychologists from using the title "psychologist" and related terms. *Id.* at 1570–71. Because the plaintiffs were practicing psychologists, the Eleventh Circuit viewed this as a commercial speech restriction. *Id.* at 1574.

---

[2] As the Fifth Circuit noted in *Serafine*, "a lawyer who is not barred in a particular state does not cease to be a lawyer because he is merely prohibited from practicing in that state." 810 F.3d at 362 n.16.

The court struck down the speech restriction on the basis that "as long as Florida has not restricted the practice of psychology, the state may not prevent the plaintiffs from calling themselves psychologists in their commercial speech." *Id*. at 1576.

Like the Fifth Circuit in *Serafine*, the court in *Abramson* recognized that even greater protections would have applied to "expressive or non-commercial speech—*in which society has an interest wholly apart from the speaker's or listener's economic interests*." 949 F.2d at 1574 (emphasis added). In a case that concerns non-commercial speech—like this case or *Serafine*—"the government's regulation or suppression of speech must be necessary to serve a compelling state interest, and must be narrowly drawn to achieve that interest." *Id*. (italics removed). *Serafine* thus faithfully applies the First Amendment in the non-commercial context anticipated by the court in *Abramson*. Therefore, the Fifth Circuit's admonition that the government may not "license speech and reduce its constitutional protection by means of the licensing alone" applies with full force here. *Byrum*, 566 F.3d at 447; *Serafine*, 810 F.3d at 362.

Similar to *Serafine*, Ms. Pulley refers to herself as a "midwife" and "Certified Professional Midwife" while engaging in public advocacy. Ms. Pulley is a full-time advocate for the practice of midwifery in her role as the Public

12

Education and Advocacy Coordinator for NARM, among other things. And the Georgia regulations governing midwives regulate speech beyond the commercial context. Ga. Comp. R. & Regs. 511-5-1-.01(1) (". . . holds himself or herself out to the public as providing the services of a midwife, *whether or not for consideration*.") (italics added); *id.* 511-5-1-.01(2) ("**Midwifery** means and includes any act or practice of attending women in childbirth, *whether or not for consideration*.") (italics added).

Therefore, Ga. Code Ann. § 43-26-6 and Ga. Comp. R. & Regs. 511-5-1 are content-based speech restrictions subject to strict scrutiny and are presumptively unconstitutional. As a result, Ms. Pulley is likely to prevail on the merits of her First Amendment claim.

## B.   Ms. Pulley is Likely to Prevail Even Under Commercial Speech Scrutiny

In describing herself as a "midwife" and "Certified Professional Midwife," Ms. Pulley does not seek to obtain clients so that she may practice midwifery in Georgia without a Georgia license. Therefore, her speech is not properly classified as "commercial speech" and, as discussed above, strict scrutiny applies here. *See Serafine*, 810 F.3d at 361.[3] Moreover, the Supreme Court has

---

[3] Commercial speech is only speech that "does no more than propose a commercial transaction." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 518 (1996) (Thomas, J., concurring) (quoting *Va. State Bd. of Pharmacy v. Va.*

held that heightened judicial scrutiny applies to a law regulating commercial speech that "imposes a burden based on the content of speech and the identity of the speaker." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).

The midwife speech ban bears these markings because it bans speech based on its content (plucking specific words from the lexicon) and based on the speakers (non-nurse midwives). It must therefore face strict scrutiny, rather than intermediate scrutiny under *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980). *See Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228, 1235 n.7 (11th Cir. 2017) ("There is some question as to whether under the Supreme Court's decision[ ] in *Sorrell* . . . an analysis to determine if the restriction is content based or speaker focused must precede any evaluation of the regulation based on traditional commercial speech jurisprudence, and if so, whether this would alter the *Central Hudson* framework."). Nevertheless, even under *Central Hudson* scrutiny, Ms. Pulley is likely to prevail in her claim that the Board's enforcement of Ga. Code Ann. § 43-26-6 and Ga. Comp. R. & Regs. 511-5-1 violates the First Amendment.

---

*Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976)); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 970 (10th Cir. 1996) ("commercial speech is . . . speech that merely advertises a product or service for business purposes"); *see also Abramson*, 949 F.2d at 1574.

Under *Central Hudson*, when the government restricts commercial speech that "concern[s] lawful activity and [is] not . . . misleading," then the Court must consider: (1) "whether the asserted governmental interest is . . . substantial;" (2) "whether the regulation directly advances the governmental interest asserted;" and (3) "whether it is not more extensive than is necessary to serve that interest." 447 U.S. at 566–57. The Board bears the burden of proving that restricting Ms. Pulley's speech satisfies *Central Hudson*'s test for commercial speech. *Edenfield v. Fane*, 507 U.S. 761, 770 (1993). And that "burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id*. at 770–71. The Board cannot meet its heavy burden in this case.

1. **Ms. Pulley's use of "midwife," "Certified Professional Midwife," and "CPM" is not inherently misleading**

As noted above, in *Abramson*, Florida law permitted the unlicensed practice of psychology, but prohibited unlicensed psychologists from representing themselves using a variety of terms associated with the practice of psychology. 949 F.2d at 1570–71. The government defended its speech restriction, contending that it was false for unlicensed psychologists to refer to

15

themselves as psychologists because "the statute defines a psychologist as someone who is licensed by the state," and it "would mislead the public into thinking that these persons were necessarily competent and qualified." *Id*. at 1576. But the Eleventh Circuit rejected the government's claims of inherent consumer confusion, recognizing that when use of terms is only potentially misleading "'the preferred remedy is more disclosure, rather than less.'" *Id*. at 1577 (quoting *Bates v. State Bar of Arizona*, 433 U.S. 350, 375 (1977)).

Likewise, in *Locke v. Shore*, 682 F. Supp. 2d 1283, 1294 (N.D. Fla. 2010), *aff'd on other grounds*, 634 F.3d 1185, 1190 n.3 (11th Cir. 2011), Florida law prohibited unlicensed residential interior designers from advertising or representing themselves as interior designers even though the law permitted them to practice that profession. In defense of the speech restriction, the government claimed that it was "misleading for a residential interior designer to call herself an 'interior designer,'" because "under the Florida statute, an 'interior designer' is a person with a license who can lawfully provide interior design services for both residential and nonresidential applications." *Id*. at 1295.

The court disagreed, however, holding that "[i]t is not misleading for an unlicensed person who lawfully practices residential interior design to refer to herself as an 'interior designer,' regardless of how the statute defines the term."

16

*Id.* at 1295–96. In so holding, the court relied on *Roberts v. Farrell*, 630 F. Supp. 2d 242, 249 (D. Conn. 2009) (citing *Abramson*, 949 F.2d at 1576), for the proposition that the circularity of making "the determination of what is 'misleading' dependent upon the parameters of the challenged restriction" would destroy the Constitution's protection of commercial speech. Furthermore, because the term "interior designer" is not a term of art, and simply describes one's trade, it was not inherently misleading. *Id.* Indeed, the court found it likely that "few if any prospective customers know the state definition of 'interior designer.'" 682 F. Supp. 2d. at 1296. Thus, according to the court, it was unlikely that the public would employ the term "interior design" in the manner it was restrictively defined in the statute. *Id.*

Similarly, in *Byrum*, 566 F.3d at 444, Texas law permitted unlicensed interior designers to practice, but prohibited them from advertising or representing themselves as "interior designers." Like the *Locke* court, the Fifth Circuit also held Texas' defense circular that due to the state's licensing regime "unlicensed interior designers who refer to themselves as interior designers will confuse consumers who will expect them to be licensed." *Id.* at 447. According to the court, the term was not inherently misleading. *Id.*

Here, Ms. Pulley's use of the terms "midwife," "Certified Professional Midwife," and "CPM" are not inherently misleading. As a factual matter she is

17

a licensed midwife in Tennessee and has received NARM's certification as a Certified Professional Midwife. Recognizing the inherent truth of Ms. Pulley's representations, the Board instead claims that because Georgia law defines "Advanced nursing practice" to include "certified nurse midwives," then Ms. Pulley's use of the term midwife "represents to the public that she is licensed to practice nursing and, further, authorized to practice as an advanced practice nurse." Exh. A at 2. But as noted above, similar arguments have been expressly rejected in *Abramson*, *Locke*, and *Byrum*.

These arguments are especially hollow here, where the only commercial activity in which Ms. Pulley is engaged is running the office for Atlanta Birth Care. *See* Pulley Dec. ¶¶ 13–15. In that context, accurately describing her background and training is important to establishing Ms. Pulley's deep connection to midwifery, but she is careful to note that she is not working as a midwife in Georgia (because of laws she also avows a desire to change). Pulley Dec. ¶ 14. Thus, "[t]he notion that [] a person would read the words ['midwife,'] and understand this as a representation that the advertiser was licensed [as a nurse,] is a stretch." *Locke*, 682 F. Supp. 2d at 1296. As a result, the Board seeks to turn the term "midwife" into a "term of art" rather than a simple description of a person's profession. *Id*. at 1295 (quoting *Roberts*, 630 F. Supp.

18

2d at 249). But that "is not the stuff of valid restrictions on protected speech." *Id*. at 1296.

Nor is Ms. Pulley's representation as a "Certified Professional Midwife" inherently misleading. In *Peel v. Att'y Registration and Disciplinary Comm'n of Illinois*, 496 U.S. 91, 96–99 (1990) (opinion of Stevens, J.), an attorney's use of the term "Certified Civil Trial Specialist—By the National Board of Trial Advocacy" on his official letterhead was challenged as misleadingly representing the government's approval of the attorney as a "specialist."

Recognizing that a "claim of certification is not an unverifiable opinion of the ultimate quality of a lawyer's work or a promise of success, but is simply a fact," a plurality of the Court noted that "[w]e are satisfied that the consuming public understands that licenses . . . are issued by governmental authorities and that a host of certificates . . . are issued by private organizations." *Id*. at 101, 103 (internal citation omitted). As a result, a majority of the Court "rejected the 'paternalistic assumption' that the 'public would automatically mistake a claim of specialization for a claim of formal recognition by the State.'" *Abramson*, 949 F.2d at 1576 (quoting *Peel*, 496 U.S. at 105–06).

Therefore, the Board's claim that Ms. Pulley's use of the term "Certified Professional Midwife" "represents to the public that she is licensed to practice

19

nursing and, further, authorized to practice as an advanced practice nurse," Exh. A at 2, suffers from the same fatal "paternalistic assumption." And thus, Ms. Pulley's use of the terms "midwife," "Certified Professional Midwife," and "CPM" are not inherently misleading.

### 2. The Board's speech restriction is not sufficiently tailored

Assuming, *arguendo*, that the Board can establish a substantial interest in restricting who may represent themselves as a "midwife" in Georgia regardless of whether they practice in the state, Ga. Code Ann. § 43-26-6 and Ga. Comp. R. & Regs. 511-5-1 are not sufficiently tailored to that interest. As noted in *Abramson*, "'the preferred remedy'" for potentially misleading speech "'is more disclosure, rather than less.'" 949 F.2d at 1577 (quoting *Bates*, 433 U.S. at 375).

For example, after holding that it was not inherently misleading for unlicensed interior designers to refer to themselves as "interior designers," the Fifth Circuit in *Byrum* proceeded to analyze the remaining *Central Hudson* factors. 566 F.3d at 447. The court held that the speech restriction did not satisfy the necessary "fit" between the legislature's goals and the suppression of truthful speech because the goal of preventing consumer confusion could have been more easily achieved by simply prohibiting unlicensed interior designers from representing themselves as "licensed" interior designers. *Id.* at

20

448–49. Thus, the Fifth Circuit directed the lower court to issue a preliminary injunction. *Id.* at 449.

On the other hand, instead of outright banning Ms. Pulley from representing herself as a "midwife" or "Certified Professional Midwife," the Board already has a more narrowly tailored solution: regulate the actual title it is concerned about—"Certified Nurse-Midwife." The Board could also require Ms. Pulley to disclose that she is not licensed in Georgia as a midwife or nurse, or explicitly disclaim that she is not a Georgia "Certified Nurse-Midwife." *See Bates*, 433 U.S. at 384 (Board could require "some limited supplementation, by way of warning or disclaimer or the like . . . so as to assure that the consumer is not misled.").

Additionally, the Board could require that "Certified Professional Midwives" provide details about the standards of their certification. *See Peel*, 496 U.S. at 110. The Board would still bear the burden of proving that these factual commercial disclosure requirements are justified, *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), but this inexhaustive list of less restrictive alternatives shows that Ga. Code Ann. § 43-26-6 and Ga. Comp. R. & Regs. 511-5-1 are not narrowly tailored to any substantial interest. That is not sufficient under *Central Hudson*, and Ms. Pulley is likely to succeed on the

merits of her First Amendment claim even if her representations are held to be commercial speech.

## II.   THE BOARD'S SPEECH RESTRICTION IRREPARABLY HARMS MS. PULLEY

Unless the Court issues a preliminary injunction, Ms. Pulley will suffer irreparable harm due to the Board's enforcement of Ga. Code Ann. § 43-26-6 and Ga. Comp. R. & Regs. 511-5-1-.01 and .02. Citing those statutory and regulatory provisions, the Board has ordered Ms. Pulley to "cease and desist from holding herself out to the public as a 'Certified Professional Midwife' and/or using the identifying title 'midwife' in any form." Exh. A at 3. She is even forbidden from using the acronym "CPM." Exh. A at 2. As a result, the Board seeks to prevent Ms. Pulley from truthfully speaking about her experience and qualifications as a midwife. Such action constitutes irreparable harm.

Establishing irreparable injury is the "sine qua non of injunctive relief." *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting *Frejlach v. Butler*, 573 F.2d 1026, 1027 (8th Cir. 1978)). A presumption of irreparable injury may be established in certain First Amendment cases where speech is "chilled or prevented altogether." *Siegel*, 234 F.3d at 1178 (citing *City of Jacksonville*, 896

F.2d at 1285). Indeed, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373; *see also Cate v. Oldham*, 707 F.2d 1176, 1188 n.10 (11th Cir. 1983).

The Board seeks to prevent Ms. Pulley from accurately describing herself as a Certified Professional Midwife, and as a midwife generally, whether online, in print, or through direct spoken advocacy, for example. Therefore, it is presumed that Ms. Pulley is irreparably harmed by the Board's restrictions on her speech. *See Siegel*, 234 F.3d at 1178; *Elrod*, 427 U.S. at 373; *Cate*, 707 F.2d at 1188 ("direct penalization, as opposed to incidental inhibition, of First Amendment rights [] constitutes irreparable injury"). As a result, Ms. Pulley has shown the need for preliminary relief. *City of Jacksonville*, 896 F.2d at 1285; *Siegel*, 234 F.3d at 1176.

## III.   PRELIMINARY RELIEF IS IN THE PUBLIC INTEREST

An order enjoining the Board's restriction on Ms. Pulley's speech is in the public interest. "No long string of citations is necessary to find that the public interest weighs in favor of having access to a free flow of constitutionally protected speech." *ACLU of Georgia,* 977 F. Supp. at 1235 (quote omitted). Indeed, the public is best served not by prohibiting truthful speech, but by the "preservation of constitutional rights." *Phelps-Roper v. Nixon*, 545 F.3d 685,

694 (8th Cir. 2008) (overruled on other grounds); *see also G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (a preliminary injunction that vindicates constitutional rights is "always in the public interest"). And "[t]he public has no interest in enforcing an unconstitutional ordinance." *KH Outdoor*, 458 F.3d at 1272.

Here, the Board's silencing of Ms. Pulley does not serve the public interest. Rather, the public interest is served by enjoining the Board from silencing Ms. Pulley's speech about midwifery. *See KH Outdoor*, 458 F.3d at 1272. As noted, even though Ms. Pulley is not currently practicing as a midwife, she plans to continue advocating for midwifery through her work as the Public Education and Advocacy Coordinator for NARM. Pulley Dec. ¶¶ 6, 15. The purpose of her advocacy is to increase the public's access to, *and awareness of*, midwifery. In order to establish credibility, it is important that Ms. Pulley continue describing herself as a "Certified Professional Midwife," "CPM," or "midwife." Doing so is *truthful* for Ms. Pulley, and it is thus in the public's interest to be informed of her qualifications while she advocates for midwifery.

## IV.   THE BALANCE OF HARMS FAVORS PRELIMINARY RELIEF

In weighing the balance of harms, the Eleventh Circuit considers the merits "as influencing our view of the relative severity of the harms." *Scott*,

612 F.3d at 1297. Thus, "when assessing the severity of burdens on speech, we have held that 'even a temporary infringement of First Amendment rights constitutes a serious and substantial injury.'" *Id.* (quoting *KH Outdoor*, 458 F.3d at 1272). In contrast, "the public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law." *See id.*

Here, the balance favors preliminary relief because Ms. Pulley suffers irreparable harm from restrictions of her truthful speech, while the Board cannot plausibly claim any harm in being enjoined from enforcing a speech prohibition that likely violates the First Amendment. As a result, the balance of equities favor the issuance of a preliminary injunction in this case.

## CONCLUSION

The Court should grant Ms. Pulley's motion for a preliminary injunction and enjoin the Georgia Board of Nursing from enforcing state law that prohibits Ms. Pulley from engaging in speech regarding her qualifications and experience as a midwife.

DATED: December 13, 2019.

Respectfully submitted,

s/ Glenn A. Delk
GLENN A. DELK
(Ga. Bar No. 216950)
The Law Office of Glenn Delk
1170 Angelo Court
Atlanta, Georgia 30319
Telephone: (404) 626-1400
Email: delk.glenn@gmail.com

JAMES M. MANLEY
(Ariz. Bar No. 031820*)
Pacific Legal Foundation
3241 E. Shea Blvd., #108
Phoenix, Arizona 85028
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: JManley@pacificlegal.org
*Pro Hac Vice to be filed

CALEB R. TROTTER
(Cal. Bar No. 305195*)
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: CTrotter@pacificlegal.org
*Pro Hac Vice to be filed

*Attorneys for Plaintiff Deborah Ann Pulley*

**Certificate of Compliance With Type-Volume Limit**

This document complies with the typeface requirements of L.R. 5.1(B) and the type-style requirements of because: this document has been prepared in a proportionally spaced typeface using Word 2013 in 13-point Century Schoolbook.

s/ GLENN A. DELK
Glenn A. Delk